Copp vs. The German American Ins. Co.

COPP VS. THE GERMAN AMERICAN INSURANCE COMPANY.

*January 15 — April 19, 1881.*

INSURANCE AGAINST FIRE. *(1) Promissory warranties in application. (2) What breaches will defeat policy. (3, 4) Questions for the jury.*

1. It was stated upon the form of application for insurance, and provided in the policy, that such application was a part of the contract, and a warranty on the part of the insured; and by such application he agreed to use only lard and sperm oil for lubricating in the mill insured, and also stated that there was a forcing pump on the premises designed expressly for extinguishing fires, and agreed to have it at all times in condition for use, with a proper supply of good hose on hand. *Held*, that these were promissory warranties in the nature of conditions subsequent.

2. While a trifling departure from the letter of such a condition, a merely technical breach, or (probably) an accidental or involuntary failure to perform the condition, not sanctioned by or known to the insured, and which did not increase the risk, would not be held to defeat the policy, yet any substantial breach would defeat it.

3. If the insured in this case, in the usual course of business, ordered lard and sperm oil for lubricating purposes, and believed that they obtained and were using such oil, and if the oil used contained lard and sperm oil, and, though compounded with a product of petroleum, was as good and safe as lard and sperm oil, there was no substantial breach of the condition concerning lubricators; and, upon the evidence in the case (for which see the opinion), the question of fact should have been submitted to the jury.

4. Whether the court should ever assume a fact as proved, and take it from the jury, where the proof consists mainly of the testimony of experts, *quære*.

APPEAL from the Circuit Court for *Monroe* County.

Action upon a policy of insurance against fire on a mill and machinery in Prescott. The policy was issued by the defendant company to Redmon, Cross & Co. The loss (if any) was made payable to the plaintiff as his interest should appear. The insurance was for one year from December 1, 1875, and the insured property was totally destroyed by fire September 20, 1876. The interest of the plaintiff in the property exceeds the sum for which it was so insured. The policy is accompanied by an application of Redmon, Cross & Co. for the in-

surance, which contains about seventy printed questions, and the answer of the applicants thereto, relating to the location, description and modes of use of the insured property. At the head of these questions is found the following: "This application to be filled up and signed by the applicant, and the same to be considered as his description of the premises, and forming a part of the contract of insurance and a *warranty* on his part." In the first paragraph of the policy, after a general description of the insured property and a statement of the sums for which it is insured, are these words: "Special reference being had to application and survey, which is hereby made a part of this policy, and a warranty on the part of the assured." The policy also contains the following stipulations: "If an application, survey, plan or description of the property herein insured is referred to in this policy, such application, survey, plan or description shall be considered a part of this contract, and a warranty by the assured; and any false representation by the assured of the condition, situation or occupancy of the property, or any omission to make known every fact material to the risk, or an over-valuation, or any misrepresentation whatever, either in a written application or otherwise,   .   .   . then, and in every such case, this policy shall be void." Amongst other defenses, the answer alleges breaches of the contract by the insured, in respect to the stipulations contained in the following questions and the answers of the insured thereto, contained in the application: "Do you agree to use only lard and tallow, or sperm and lard oils, for lubricating? Yes. *Forcing pump.* Is there one on the premises designed expressly for putting out fire? Yes. If so, do you agree to have it at all times in condition for use, with a proper supply of good hose on hand? Yes."

The testimony is sufficiently stated in the opinion. By direction of the court, the jury found a verdict for the defendant; and from a judgment on the verdict plaintiff appealed.

For the appellant there were briefs by *J. S. White,* his at-

torney, and *Vilas & Bryant*, of counsel, and oral argument by *Wm. F. Vilas:*

There was evidence tending to prove a compliance with the contract in respect to the force pump, and also that the oil used in the mill was a compound of lard and sperm oil. It was therefore error to nonsuit. *Gower v. Railway Co.*, 45 Wis., 183; Broom's Leg. Max., 77. The evidence offered to show that the oil used was bought for, and was as useful and safe as, lard and sperm oil, should have been received. If the assured, in good faith and in the ordinary mode of dealing, bought the oil as lard and sperm oil, and lard and sperm were so far ingredients in its composition as to give them, as experienced users of oil, the belief that it was what it was represented to be, and they used it in that honest belief, and if it was, in fact, as useful and safe as pure lard and sperm, then they have so fairly and honestly performed the contract that the other party can have suffered no detriment. Such a substantial compliance was all that, in view of the circumstances and the usages of business, could have been intended by the parties. Wood on Ins., 144, 321; *James v. Lycoming Ins. Co.*, 4 Ins. L. J., 9; 9 id., 230; 2 Parsons on Con., 537; *First Nat. Bank v. Ins. Co.*, 6 Cent. L. J., 316; *Hoffman v. Ins. Co.*, 32 N. Y., 405. And for a court, in such a case, to impose the penalty of entire forfeiture for the want of a literal compliance, would be to lend itself to the accomplishment of ingenious and skillful rascality. *Crocker v. Ins. Co.*, 8 Cush., 79; *Ins. Co. of N. A. v. McDowell*, 50 Ill., 120; *Percival v. Ins. Co.*, 33 Me., 242; *Daniels v. Ins. Co.*, 12 Cush., 416, 426; *Underhill v. Ins. Co.*, 6 id., 440; *Parker v. Ins. Co.*, 10 Gray, 302; *N. Y. B. & P. Co. v. Ins. Co.*, 10 Bos., 428; *Sayles v. Ins. Co.*, 2 Curt. C. C., 610; *Peoria M. & F. Ins. Co. v. Lewis*, 18 Ill., 553; *Arcangelo v. Thompson*, 2 Campb., 620.

*J. W. Lusk*, for the respondent, argued, among other things, that the plaintiff cannot recover if there has been a breach, at

least any substantial breach, of the agreement as made and in the manner and form agreed upon by the parties. *Blumer v. Ins. Co.*, 45 Wis., 627; *Ripley v. Ins. Co.*, 30 N. Y., 136; *First Nat'l Bank v. Ins. Co.*, 50 id., 45; *Bobbitt v. Ins. Co.*, 66 N. C., 70; *Continental Ins. Co. v. Kasey*, 25 Gratt., 268; *Alexander v. Ins. Co.*, 66 N. Y., 466; *Matson v. Ins. Co.*, 73 N. Y., 310; *Jeffries v. Ins. Co.*, 22 Wall., 47. The agreement is conclusive, and the only question to be considered, is, Did the assured perform the contract? *Ætna Ins. Co. v. France*, 91 U. S., 510; Wood on Ins., 318; May on Ins., 161, 194; 1 Phillipps on Ins., sec. 866; *Day v. Ins. Co.*, I McArthur, 41. It was proved beyond question that the lubricating oil used by the assured was not such as, by the contract, they agreed to use. It was entirely immaterial, therefore, whether such oil was better or poorer than lard or sperm oil, or whether or not they bought it for lard or sperm oil. The evidence in regard to the force pump also showed conclusively a failure to comply with the agreement.

The following opinion was filed February 8, 1881:

LYON, J. The stipulations in the contract of insurance to be considered on this appeal, and which are contained in the questions propounded by the insurance company in the application and the answers of the insured therein, are promissory warranties in the nature of conditions subsequent. It is the settled law in this state that any substantial breach of such stipulations in policies containing provisions like those in the policy in suit, defeats the policy. *Blumer v. Ins. Co.*, 45 Wis., 622; *Redman v. Ins. Co.*, 49 Wis., 431. It is freely admitted by the learned counsel for the defendant company, that, to work a forfeiture of the contract, the breach must be a substantial one. Such is doubtless the true rule of law. A trifling departure from the letter of the condition — a mere technical breach,— or probably an accidental or involuntary failure to perform the condition, not sanctioned by or known

to the insured, which does not increase the risk, would not be held to defeat the policy. This rule is based on the presumption that the parties could not have intended by their contract that so serious a result should follow a failure to fulfill the strict letter of the stipulation, when the risk was not increased by such failure. It is difficult to lay down any general rule by which to determine whether a failure in any given case literally to perform a condition is or is not a substantial breach of the condition. The question must be determined upon the facts and circumstances of the case in which it arises. In the case before us, we are clearly of the opinion that if the insured, in the usual course of business, ordered lard and sperm oil for lubricating purposes, and believed they obtained and were using what they ordered, and if the oil they used contained lard and sperm oil, and (although compounded with a product of petroleum) was equally as good and safe as pure lard and sperm oil, there is no substantial breach of the condition concerning lubricators.

It appears that, some time before the mill was burned, the insured received from the Backus Oil Company, of Cleveland, a consignment of oil, branded "Fine Engine Oil," and "XXX Cylinder Oil," which they used for several months before the fire to lubricate their machinery. The plaintiff offered to prove that such consignment was made pursuant to a negotiation in the usual course of business with an agent of the oil company for the purchase of a compound of lard and sperm oils; that the agent represented that he sold such compound under the name of "Fine Engine Oil," for use in mills; that they purchased and received the oil under an express agreement that it was a compound of lard and sperm oils, and used it believing it to be such; and that the oil so used was equally as good and safe as pure lard and sperm oils. This testimony was rejected by the court. We think it should have been received. No analysis of the oil so used by the insured was proved, and there is no direct testimony on the part of the

defendant as to the ingredients which it contained. The only specific proof given by the defendant on the subject is the statements of witnesses who testify from recollection as to its color and smell. It was in testimony that petroleum is usually the basis of fine engine and XXX cylinder oils; yet the testimony tends to show that these brands were placed by the oil company on very different compounds, some of which contain tallow and lard and sperm oils, according to the orders which the company received from its customers. It is a fair inference from the testimony of both the secretary and the superintendent of the oil company, that a compound of pure lard and sperm oils was liable to be branded with the above brands, and would have been had a customer requested it.

There was much testimony given on behalf of the defendant tending to show the usual composition of oils of the above brands. This testimony was mostly given by experts, some of whom were evidently concealing what they regarded as secrets of the trade. The result is that the testimony is, in some respects, quite uncertain and unsatisfactory. We will assume, however, that it proved, *prima facie,* a breach of the condition in respect to lubricators. Against this testimony, which is by no means conclusive or indisputable, Mr. Redmon, one of the insured, testified that he had used oils a good deal for twenty years; that the oil used in the mill was lard and sperm oil; that he examined the oil in question, when it came, and that his judgment and understanding is that it was lard and sperm oil mixed. It seems to us that, in view of the doubtful and inconclusive character of the evidence of the defendant on the subject, the foregoing direct and positive testimony of Mr. Redmon fairly raised an issue of fact for the jury on the question as to whether there had been a substantial breach of the condition under consideration. How can it be correctly said that it was conclusively proved that the oil used was not lard or sperm oil, when one of the insured, who was an expert and knew the facts, testified that it was lard and sperm? If

we regard Mr. Redmon's testimony as only the expression of an opinion as to the kind of oil used, it still tends to show performance of the condition. In that view it was sufficient to send the case to the jury.

We greatly doubt whether the court can properly assume a fact to be proved, and take it from the jury, if the proof consists mainly of the testimony of experts, as it does in this case. It is only when the testimony leaves no reasonable doubt of the fact, that the court should exercise that power; and in the very nature of things there are usually elements of doubt, uncertainty and inconclusiveness in expert testimony. It is upon this principle that, in actions for infringements of patents and trade-marks (which usually depend upon expert testimony) the courts do not decide the question of infringement on demurrer to the pleadings, no matter how clearly the infringement or non-infringement may be alleged therein, but put the parties to their proofs. *Leidersdorf v. Flint*, 50 Wis., 401, is such a case. We do not determine the point, however, but only suggest it. As to the stipulations in regard to the force pump and hose, all that need be said is, that the evidence tends to show that there was a force pump on the premises designed expressly for putting out fires; that it was at all times in condition for use, and that it had attached to it fifty feet of hose. Whether these facts were proved, and whether there was a "proper supply" of hose, as required by the contract, were clearly questions for the jury.

The learned circuit judge left none of these disputed questions of fact to the jury, but directed a verdict for the defendant, on the ground (as we are informed) that the evidence conclusively proved a breach of the condition in respect to lubricators. In the view we have taken of the evidence, we think this was error.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

Upon a motion for a rehearing, *Mr. Lusk*, in behalf of the

respondent, contended that it was not conceded that the plaintiffs might recover unless there had been such a breach of the warranty as increased the risk. He argued that a breach of the warranty, whether material to the risk or not, would defeat a recovery, citing, in addition to the cases in his former brief, *Redman v. Ins. Co.*, 47 Wis., 99; *Duncan v. Ins. Co.*, 6 Wend., 495; *Nicoll v. Ins. Co.*, 3 W. & M., 529; 2 Parsons on Con., 429: *Mut. B. L. Ins. Co. v. Miller*, 39 Ind., 475; 1 Phillipps on Ins., 418; May on Ins., 160; 3 Kent's Comm., 472; *Burritt v. Ins. Co.*, 5 Hill, 193; Wood on Ins., 317, 318, 271; *Wood v. Ins. Co.*, 13 Conn., 533. And the plaintiff cannot recover even if the breach of the contract was to the advantage of the company. *Jeffries v. Ins. Co.*, 22 Wall., 53. It is therefore immaterial whether the oil used "was equally as good and safe as pure lard and sperm oils." Nor, if the assured bought the oil for lard and sperm, can his ignorance or carelessness excuse the violation of the contract. 1 Phillipps on Ins., 464; May on Ins., 161; *Cooper v. Ins. Co.*, 50 Pa. St., 299; *Lœhner v. Ins. Co.*, 17 Mo., 247. It is the duty of the court to grant a nonsuit or direct a verdict when, as in this case, the evidence is so clearly one way that the court would feel bound to set aside a contrary verdict. See *Commissioners v. Clark*, 94 U. S., 284; *Lawrence University v. Smith*, 32 Wis., 592.

The following opinion was filed April 19, 1881:

Lyon, J. In the opinion filed in this case it was said: "It is freely admitted by the learned counsel for the defendant company, that, to work a forfeiture of the contract, the breach must be a substantial one." In his argument on a motion for a rehearing of the cause, the counsel referred to disclaims any such admission. A re-examination of his original brief shows that he is right, and that the statement was not warranted by anything he said. His language was: "We find that if there has been a breach of either of the agreements mentioned, the

plaintiff cannot recover; at least, any *substantial* breach of the agreement as made, and in the manner and form agreed upon by the parties." The writer of the opinion hastens to express his regret that he misapprehended the meaning of counsel, and, with the assent of his brethren, to withdraw the objectionable statement.

On the merits of the motion, it is only necessary to say that we have carefully considered the argument of the learned counsel, but it fails to change our views of the law of the case, as expressed in the former opinion. The case was decided expressly and entirely upon its own facts; and although a general rule was suggested as probably correct, none was authoritatively laid down for the government of other cases. It was believed that this was sufficiently stated in the opinion.

*By the Court.*— Motion denied, with $25 costs.