## MURPHEY et al. v. LIVERPOOL AND LONDON AND GLOBE INS. CO.

No. 10319—Opinion Filed Sept. 19, 1922.

Rehearing Denied April 24, 1923.

(Syllabus.)

### 1. Insurance—Fire Policy—Stipulations as to Incumbrances—Effect.

Where an owner in possssssion of personal property incumbered by chattel mortgage made an oral application for insurance thereon, made no representations concerning his title, and the insurer made no inquiry about the condition of the title, and no fraud appears, held, that the insurer will be presumed to have insured the property upon its knowledge of the condition of the title and to have waived

all provisions in the policy providing for its forfeiture by reason of any facts or circumstances (such as incumbrances) affecting the title of the property insured.

## 2. Same—Policy—Standard Form — Effect on Rules of Construction.

The adoption by the Legislature of a standard form of fire insurance policy providing, "If the subject of insurance be personal property and be or become incumbered by a chattel mortgage should be void unless otherwise provided by agreement indorsed hereon," does not change the rule that failure of the insurer to make inquiry as to the condition of the property insured waives such provision.

Error from Superior Court, Muskogee County; Guy F. Nelson, Judge.

Action by Clara E. Murphey and Julia G. Cosper, against Liverpool and London and Globe Insurance Company, Limited, of Liverpool, England, to recover $1,500 alleged to be due on a fire insurance policy. Judgment for defendant, and plaintiffs bring error. Judgment of the trial court reversed, and cause remanded, with directions to enter judgment for the plaintiffs.

W. W. Noffsinger and A. L. Harris, for plaintiffs in error.

Ames, Chambers, Lowe & Richardson, for defendant in error.

KENNAMER, J. This action was instituted in the superior court of Muskogee county by Clara E. Murphey and Julia G. Cosper, plaintiffs, against the Liverpool and London and Globe Insurance Company, Limited, of Liverpool, England, defendant, to recover $1,500 alleged to be due upon a fire insurance policy under the terms of which the plaintiffs had insured certain broom corn, which was totally destroyed by fire on the night of the 17th of September, 1917. The cause was submitted to the court without a jury on the 7th day of September, 1918, upon an agreed statement of facts, and judgment entered in favor of the defendant. This appeal is prosecuted by the plaintiffs to reverse the judgment of the trial court.

The material facts necessary to be considered in determining the questions involved on this appeal are, in substance, as follows:

The insurance policy sued on was of standard form as provided for by section 3482, Revised Laws 1910, and provided:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the subject of insurance be personal property and be or become incumbered by a chattel mort-gage * * * or if any change, other than by the death of the insured, take place in the interest, title or possession of the subject of insurance (except change of occupants, without increase of hazard) whether by legal process or judgment, by voluntary act of the insured, or otherwise."

The policy was issued upon the oral application of the plaintiffs to the defendant. The subject of the insurance was a crop of broom corn, and on the date the plaintiffs made application for said insurance, on or about September 15, 1917, the defendant was advised by the plaintiffs that Clara E. Murphey owned an undivided one-third interest in the broom corn and Julia G. Cosper owned the remaining undivided two-thirds interest in said corn. The broom corn had been raised by Julia G. Cosper as the tenant of Clara E. Murphey. The purpose of securing the insurance, no doubt, was to protect the property of the plaintiffs until the same could be marketed. The plaintiffs paid the defendant the premium due on said policy on the date of the application; two-thirds being paid by Julia G. Cosper and one-third by Clara E. Murphy. The policy was issued on September 15, 1917, and mailed by the defendant to the plaintiff Julia G. Cosper, at Boynton, on September 16, 1917, and received by Julia G. Cosper on September 18, 1917, from her mail box, where it had been deposited on September 17, 1917, the next morning after the fire which destroyed the property.

On the date of the application for insurance by the plaintiffs, as shown by the agreed statement of facts, there existed a valid recorded chattel mortgage executed by Julia G. Cosper and her husband to the bank of Boynton upon the interest of Julia G. Cosper in the broom corn to secure the payment of an indebtedness due the bank of $750, and said chattel mortgage also covered certain live stock of the value of $3,100.

It is admitted that on the date of the application for said policy by the plaintiffs, no statements were made by the plaintiffs as to the existence of any mortgage upon the subject of the insurance, and that no inquiry was made by the defendant's agent issuing the policy about any incumbrances on the property. It is admitted that Clara E. Murphey had no knowledge of the existence of the mortgage. It is stipulated that the plaintiffs did not know and were not advised by the defendant that when the policy was issued it would contain a provision to the effect that, if the subject of insurance be personal property and be or become incumbered by a chattel mortgage, the entire

policy should be void unless otherwise provided by agreement indorsed thereon.

The decisive question presented by this appeal is whether or not the fact that the property of the plaintiffs was incumbered by a chattel mortgage on the date the policy was issued precludes the plaintiffs from recovering in this case.

Counsel for the defendant insurance company assert that the judgment of the trial court should be affirmed, adjudging the defendant not liable upon the policy for the reason the policy was the standard form as prescribed by section 3483, containing the provision, "This entire policy, unless otherwise provided by agreement indorsed hereon or attached hereto, shall be void if the subject of insurance be personal property and be or become incumbered by a chattel mortgage."

In the case of North British & Mercantile Ins. Co. v. Wright et al., 54 Okla. 715, 154 Pac. 655, it was held:

"It is well settled, not only by the decisions of this state, but of many other states, that the agreement of the asssured that the property covered by the policy is not mortgaged, or otherwise incumbered, or that said property shall not be mortgaged or incumbered during the existence of the policy, comes wihin that class of contracts known as promissory warranties, and that the effect of the breach of the warranty is to annul the policy without regard to the materiality of the subject of warranty, or whether the breach had anything to do in producing the loss. That such warranty is in the nature of a condition precedent, and a full compliance with the conditions of the contract must be performed by the insured before he can demand performance on the part of the insurer."

We have no fault to find with the rule announced in the above case that where the insured warrants the property to be free from incumbrance and there is a breach of such warranty, such breach of warranty avoids the policy. In the case of St. Paul Fire & Marine Ins. Co. v. Peck, 40 Okla. 396, 139 Pac. 117, it was held:.

"It is elementary, and the decisions uniformly hold, that, where a policy of insurance contains a provision 'that, if the title to the property be or become incumbered, the policy shall be void,' in that event, if at the time the policy is issued the property is incumbered and the insured conceals that fact, or if subsequent to the issuance of the policy the insured incumbers the property without the consent of the company, he cannot recover."

But this class of cases are readily distinguishable from the case under consideration. The admitted facts in the case at bar show conclusively that the plaintiffs concealed no fact from the defendant, but applied and paid the premium for the insurance in the utmost good faith, and there is no intimation from the facts as agreed to that the plaintiffs had any intention of concealing any facts from the defendant. Furthermore, it appears from the admitted facts that the defendant accepted the money of the plaintiffs, having been advised justly what interest each of the plaintiffs had in the property, and agreed to mail the policy to the plaintiffs. The admitted facts show that the loss was an honest loss. The statute does not forbid the defendant from insuring mortgaged property, but only provides that in the event the subject of the insurance be personal property and be or become incumbered by a chattel mortgage, the agreement to insure such property shall be indorsed thereon. Evidently such a provision in the policy is for the benefit of the insurer, and such provision may be waived. The rule seems to be well established and supported by many authorities that where the insurer issues a policy upon an oral application without making any inquiry as to the nature of the title to the property insured, the presumption arises that the insurer has written the policy on its own knowledge and thereby waived the condition which would have invalidated the policy. Humble v. German Alliance Ins. Co. (Kan.) 116 Pac. 472, 137 Pac. 980; Neher v. Western Assur. Co. (Wash.) 82 Pac. 166; Insurance Company v. Bohn, 48 Neb. 743; Great Southern Fire Insurance Co. v. Burns & Billington (Ark.) 175 S. W. 1161; Farmers' State Bank v. Tri-State Mutual Grain Dealers' Fire Ins. Co., 41 S. D. 398, 170 N. W. 638; Peter Gregerson v. Phoenix Fire Ins. Co. (Wash.) 170 Pac. 331, L. R. A. 1918E, 521; Georgia Home Ins. Co. v. Holmes, 75 Miss. 390.

In the case of Farmers' State Bank v. Tri-State Mutual Grain Dealers' Fire Ins. Co., the Supreme Court of South Dakota approved the rule announced by the Supreme Court of Nebraska in German Insurance & Sav. Inst. v. Kline, 44 Neb. 395, 62 N. W. 857, as follows:

"When an insurance company issues its policy, and accepts and retains the premium, without requiring an application by the insured, and without making any inquiry as to the condition of the property or the state of the title, and the insured has in fact an insurable interest, the company will be con-

clusively presumed to have insured such interest, and to have waived all provisions in the policy providing for its forfeiture by reason of any facts or circumstances affecting the condition or title of the property in regard to which no such statement was required or inquiry made."

South Dakota, by act of the Legislature, c. 126, Laws 1905, adopted a form of insurance contract known as a "standard form."

Counsel for the defendant insurance company in the case at bar contend that the authorities supporting the rule that where a policy of insurance is issued without written application and no inquiry is made as to the condition of the title the insurer will be held to have waived the provision in the policy that if the property be incumbered by chattel mortgage the policy shall be void, are inapplicable and not controlling nor even persuasive, in this jurisdiction, because we have in Oklahoma what is known as the "standard form" of fire insurance policy. We do not agree with counsel in this contention.

In the case of Gregerson v. The Phenix Fire Ins. Co., supra, the Supreme Court of Washington in a well-reasoned opinion repudiated the contention made by counsel for the defendant. Mr. Justice Chadwick, in delivering the opinion of the court, said:

"Counsel for appellant contends that the act of the Legislature in adopting an exclusive standard form of fire insurance policy gave it the effect of positive law, and therefore there can be no waiver of the clause set up as a defense. Counsel cites no authority to sustain this contention, and from an examination of the books we are convinced that where it has been urged, the courts have quite generally rejected it. Chichester v. New Hampshire F. Ins. Co., 74 Conn. 510, 51 Atl. 545; Kollitz v. Equitable Mut. F. Ins. Co., 92 Minn. 234, 99 N. W. 892; Straker v. Phenix Ins. Co., 101 Wis. 413, 77 N. W. 752; John Davis & Co. v. Insurance Co. of N. A., 115 Mich. 382, 73 N. W. 393; Reed v. Washington F. & M. Ins. Co. 138 Mass. 572; Dunton v. Westchester F. Ins. Co., 104 Me. 372, 20 L. R. A. (N. S.) 1058, 71 Atl. 1037, 14 R. C. L. 932; Vance, Ins. p. 430; 1 Cooley, Ins. p. 630. Cooley says in his work on Insurance: 'The fact that a fire insurance policy is a standard form prescribed by statute does not alter its status as a contract, which must be construed by the rules of construction usually applied to insurance contracts.' Vol. 1, p. 630.

"And in vol. 3, p. 2610, he quotes the following from Knarston v. Manhattan L. Ins. Co., 140 Cal. 57, 73 Pac. 740: 'There is no good reason why, if in the face of a stipulation in a policy forbidding it, such condition may be waived by parol, a provision

of law similar in effect may not be equally waived. The provision of the Code, as well as the stipulation for a forfeiture in the policy, were equally matters of benefit to the company, and it is the rule that not only provisions in a contract may be waived by the party for whose benefit they are inserted, but that he may also waive statutory, and even constitutional, provisions under which he may derive a benefit.'

"The provisions in the standard policy have been used by different insurance companies in their respective policies for many years. Their meaning and effect have been the subject of much judicial inquiry, and although different courts have announced different rules, they have become fairly well defined. It is with this idea that the Legislatures of this state and of other states have adopted a standard form of fire insurance policy. The intention was not to change the meaning or effect of terms, which had become fairly well settled, but was to combine these terms in a standard policy for the sake of uniformity. In Straker v. Phenix Ins. Co., 101 Wis. 413, 77 N. W. 752, the court said: 'The object of such statutes was, practically, to have but one form of policy, instead of having a different form for each company doing business, and each company changing its form whenever by so doing it could escape the consequences of any new decision made by the court.'

"In Gazzam v. German Union F. Ins. Co., 155 N. C. 330, 71 S. E. 434, Ann. Cas. 1912C, 362, the court quotes the following from Vance on Insurance: 'This contention, however, has been held to be without merit, for the terms of these statutory policies were chosen with reference to the construction given by the precedent cases to similar terms in other policies, and therefore ought to be regarded as being used in the sense of their previous construction.'"

See North British & Mercantile Ins. Co., v. Lucky Strike Oil & Gas Co., No. 10734, 86 Okla. 192, 207 Pac. 446.

After a careful consideration of the authorities cited by counsel in their respective briefs and an examination of many other authorities, we are clearly of the opinion that the judgment of the trial court, under the admitted facts exonerating the defendant from liability, must be reversed. There being no controversy as to the facts in the case, the judgment of the trial court is reversed, and the cause is remanded to the superior court of Muskogee county, with instructions to enter judgment in favor of the plaintiffs in accordance with the prayer of their petition.

KANE, JOHNSON, McNEILL, MILLER, and NICHOLSON, JJ., concur.